UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BLAKE HUDSON,

       Petitioner,

                                  Case No. 13-11963

v.                           Honorable Victoria A. Roberts

CARMEN PALMER,

       Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT**
**GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner David Blake Hudson filed a petition for writ of habeas corpus under 28

U.S.C. § 2254 on May 1, 2013.  The *pro se* petition challenges Petitioner's Wayne

County, Michigan convictions for armed robbery, carjacking and three firearm offenses.

Petitioner claims that his trial and appellate attorneys were ineffective, that the trial court

violated his right to due process by allowing the prosecutor to impeach him with a prior

conviction, and that the state courts abused their discretion during state collateral

proceedings by denying him an evidentiary hearing or new trial on the basis of newly-

discovered evidence.

Respondent Carmen Palmer filed an answer to the petition in which she urges

the Court to deny the petition on grounds that Petitioner procedurally defaulted three of

his six habeas claims in state court and that the state courts' decisions were not

contrary to, or unreasonable applications of, Supreme Court precedent.

The Court reviewed the state court record and agrees with Respondent that Petitioner's claims do not warrant habeas relief. The Court **DENIES** the habeas petition.

## I. Background

### A. The Charges and Trial Testimony

In case number 08-13877, the Wayne County prosecutor charged Petitioner with armed robbery, felon in possession of a firearm, and possession of a firearm during the commission of a felony (felony firearm). The charges arose from a robbery near Seven Mile Road and Snowden Street in Detroit on April 9, 2008. The victim was Richard Collins.

In case number 08-10774, the prosecutor charged Petitioner with armed robbery, carjacking, and felony firearm. These charges arose from an incident that occurred on April 10, 2008, at Gino's Dry Cleaners in Detroit. The victim was Robin Palmer. The state trial court consolidated the two cases for trial in Wayne County Circuit Court, where the evidence established that,

> [t]he first robbery occurred on April 9, 2008, when . . . Richard Collins was robbed at gunpoint at about 9:30 p.m. at a party store, but he did not promptly report the incident to police.
>
> The second robbery occurred on April 10, 2008, at approximately 4:00 p.m., when Robin Palmer and her young daughter were robbed at a dry cleaners within a mile of the Collins robbery. At gunpoint, the robber took her purse, coat, and the keys to her Cadillac Deville. The robber drove off in her car, and Palmer went to the police station to report the robbery. While she was making the report, she was advised that her car had been recovered about a block from the cleaners. While waiting for the tow truck to remove her car, she twice saw defendant drive by the location in a burgundy colored Taurus or Sable and advised the police that he was the man who had robbed her.

2

At about the same time, Collins was at home when he also saw a burgundy Sable repeatedly circling the block. Collins saw the police down the street and went to see what was happening. The police were just recovering Palmer's vehicle. During that time, Collins saw defendant stop, get out of the car, and walk toward him. Defendant then appeared to recognize Collins, and returned to his car and drove off. Collins noted the license plate, "VP Firm," and approached the police to tell them about the robbery that had occurred the night before.

That same night, both Palmer and Collins went to the police station to view photographs of possible suspects. Neither identified a suspect, and defendant's photograph was not in the array. Detroit Police Officer Michael McGinnis ran the license plate number "VP FIRM" through the LEIN computer but did not locate a record of that plate number.

On April 19, 2008, Detroit Police Officer Barron Townsend and his partner, Rhonda Sherman, received a run to Henry Ford Hospital regarding a shooting victim who had driven himself to the hospital. Defendant, the shooting victim, had sustained gunshot wounds to his left arm. Defendant drove to the hospital in his car—a Mercury Sable with the license plate "VP FIRM." The vehicle was impounded because it was involved in a shooting, and defendant was arrested at the hospital for something unrelated to the present armed robberies.

A live line-up regarding the Collins and Palmer robberies was scheduled, but defendant refused to participate. On May 13, 2008, both Collins and Palmer separately viewed a photographic array in the presence of McGinnis and defense counsel, and each one immediately picked out defendant's photograph. Palmer indicated that she was 100 percent confident in her selection, and Collins indicated that he was "very confident" in his selection.

The defense presented an alibi defense. William Wells testified that he is a counselor and minister and that he knew defendant through the "Snap–Back Program," a program for people on probation and parole. He testified that he met with defendant at a home he owns at 15640 Springer in Eastpointe on April 10, 2008, from 3:28 p.m. through 4:47 p.m. He first began meeting with defendant in March 2008. Wells brought a written record from his meeting with defendant on April 10, but did not bring any records from any other purported weekly meetings. On cross-examination, Wells was asked about aliases he has used in the past, including Charles Banks, Daniel Oakley, William Terrance Banbury, and David Elliot Barnett. Wells admitted that he had been convicted of 3rd degree retail fraud in May 2000. He also admitted that he never informed police that defendant was with him at the time of the Palmer robbery.

3

Denise Pratt testified that defendant is her "significant other."  She remembered the date of April 9, 2008, because that was the night of the Gucci Man concert that defendant wanted to attend, and defendant was stressed about the concert because he could not go.  Defendant cooked dinner at 7:00 p.m. and never left the house.  On April 10, 2008, she took defendant to see his parole officer sometime between 9:30 a.m. and 10:00 a.m.  She later dropped him off at the Snap–Back Program at approximately 3:30 p.m. in Eastpointe, and then picked him up there at 4:45 p.m.  Pratt testified that she and defendant were living together in April 2008 at 4610 Stockton in Detroit, and that defendant had moved in with her in March 2008.

Deandre Gracyse, Pratt's 15–year–old son, testified that defendant is his mother's boyfriend.  He remembered the date of April 9, 2008, because that was the date of the Gucci Man concert and defendant was stressed all day because he wanted to attend the concert.  Gracyse indicated that he saw defendant at home at 4:30 p.m. and later, and that defendant never left the house.  Gracyse further testified that defendant had been living with his mother since October 2007.

Defendant testified that he was living at 4610 Stockton in April 2008.  On April 9, 2008, he got out of work at 4:00 p.m. and drove home with Denise Pratt.  He cooked dinner at 7:00 p.m., and they "hung out" all night.  He recalled the night because it was the night of the Gucci Man concert.  On April 10, 2008, he met with his parole officer in the morning, and Pratt later drove him to the Snap–Back Program in Eastpointe.  She dropped him off at 3:30 p.m., and he was there until 4:45 p.m.

Defendant testified that he previously had contact with Richard Collins on a Monday in late March 2008.  Defendant indicated that Collins did not like defendant because they had a small altercation over the playing of loud music in a car.  Defendant denied robbing either Collins or Palmer.

On cross-examination, defendant admitted that he told the police at the hospital on April 19, 2008, that he lived at 19321 Houghton in Detroit.  He also admitted telling this information to his parole officer.  He admitted that he owns the burgundy Mercury Sable.  He testified that Collins was lying when he testified that he had never before met defendant.  Defendant denied telling the police that his grandmother lived on Appoline, and did not recall telling the police that Palmer was his "ex" and that she accused him of robbery because she is bitter.

On rebuttal, defendant's parole officer, Denise Jones, testified that she met with defendant for 5—7 minutes beginning at 10:21 a.m. on April 10,

4

2008.  On that date, defendant indicated that he was living at 19321
Houghton in Detroit with his girlfriend, Salika Pemberton, and her mother.
Jones called Pemberton and verified that information.  Jones had never
heard of William Wells, Charles Banks, Daniel Oakley, Dwayne Ferguson,
William Banbury, or David Barnett, and had never heard of the Snap–Back
Program.  She never referred defendant to that program. When she met
with defendant on April 10, he never mentioned Wells or counseling.  It
was not until June 2008 that defendant ever mentioned the Stockton
address.

Officer Michael McGinnis testified that when he took defendant from the
jail to be arraigned on one of the robbery charges, defendant stated that
he used to date Robin Palmer.  McGinnis ran the address of 15640
Springer in Eastpointe through the computer on April 10, 2008, and there
was no record of Wells or any of his aliases ever owning that house for at
least ten years prior.

Richard Collins testified that he never had any contact with defendant in
March 2008.  He produced work documents indicating that he left for
California on March 7, 2008, and that he did not return to Michigan until
April 1, 2008.

*People v. Hudson*, Nos. 290148 and 290215, 2010 WL 1873290, at *1 - *3 (Mich. Ct.

App. May 11, 2010) (unpublished).

## B.  The Verdict, Sentence, and Direct Appeal

There were no lesser-included offenses to consider, and, on December 10, 2008,

the jury found Petitioner guilty, as charged, of two counts of armed robbery, Mich.

Comp. Laws § 750.529, one count of carjacking, Mich. Comp. Laws § 750.529a, one

count of felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and two counts

of felony firearm, Mich. Comp. Laws § 750.227b.  On January 7, 2009, the trial court

sentenced Petitioner as a habitual offender to concurrent terms of twenty-one years, ten

months to forty years in prison for the robbery and carjacking convictions and three to

seven and a half years in prison for the felon-in-possession conviction.  The court

sentenced Petitioner to a consecutive term of two years in prison for the felony firearm convictions.

On appeal from his convictions, Petitioner argued through counsel that: (1) his trial attorney was ineffective for failing to move to suppress the complainants' identification testimony following a suggestive pretrial photographic lineup; (2) the trial court violated his right to due process by permitting the prosecutor to impeach him with evidence of a prior conviction for unarmed robbery; and (3) trial counsel was ineffective for permitting the prosecutor to impeach one of the alibi witnesses with a misdemeanor conviction for third-degree retail fraud. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions in an unpublished, *per curiam* opinion. *See Hudson*, Nos. 290148 and 290215, 2010 WL 1873290.

Petitioner raised the same three issues in an application for leave to appeal in the Michigan Supreme Court. On September 27, 2010, the state supreme court denied leave to appeal because it was not persuaded to review the issues. *See People v. Hudson*, 488 Mich. 871; 788 N.W.2d 444 (2010).

## C. The Post-Conviction Proceedings in State Court

Petitioner subsequently filed a motion for relief from judgment in which he argued that trial counsel was ineffective for failing to request appointment of an expert defense witness on identification, and appellate counsel was ineffective for failing to raise Petitioner's claim about trial counsel on direct appeal. The trial court denied Petitioner's motion on grounds that Petitioner's claims lacked merit and he failed to show "good cause" under Michigan Court Rule 6.508(D)(3) for not presenting his claims on appeal.

6

*See People v. Hudson*, Nos. 08-10774 and 08-13877 (Wayne Cnty. Cir. Ct. June 14, 2011).

Petitioner filed a second motion for relief from judgment in which he claimed to have newly discovered evidence that someone named Calvin Wesson admitted to Antoine Simmons that Wesson committed the carjacking for which Petitioner was tried and convicted.  The trial court denied Petitioner's motion after determining that it was precluded from considering Petitioner's claim because he previously filed a motion for relief from judgment, and Michigan Court Rule 6.502(G) permits a defendant to file only one motion for relief from judgment.  *See People v. Hudson*, Nos. 08-10774 and 08-13877 (Wayne Cnty Cir. Ct. Aug. 2, 2011).

Petitioner appealed the trial court's decisions on his post-conviction motions to the Michigan Court of Appeals, which dismissed and denied his application for leave to appeal.  The  Court of Appeals stated that, with regard to the trial court's June 14, 2011 order, Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  As for the trial court's order dated August 2, 2011, the Court of Appeals stated that Petitioner had failed to establish an exception to the rule that a movant may not appeal the denial of a successive motion for relief from judgment.  *See People v. Hudson*, No. 307968 (Mich. Ct. App. Mar. 16, 2012).  The Michigan Supreme Court rejected Petitioner's claims for the same reasons.  *See People v. Hudson*, 493 Mich. 900; 822 N.W.2d 792 (2012).

**D. The Habeas Petition and Answer to the Petition**

On May 1, 2013, Petitioner filed his habeas corpus petition in which he raises the six claims that he presented to the state courts.  He lists the claims in his form petition as follows:  (1)  ineffective assistance of counsel (failure to suppress the photographic identification testimony of witnesses after participation in an unfairly suggestive photographic line-up procedure; (2) ineffective assistance of trial counsel (failure to object to wrongful impeachment of a key alibi witness; (3) ineffective assistance of trial counsel (failure to seek appointment of an expert witness in eyewitness identification); (4) newly discovered evidence; abuse of discretion by the state courts in denying retrial or hearing; (5) ineffective assistance of appellate counsel (failure to raise a claim about trial counsel); and (6) erroneous impeachment on the basis of his prior conviction for unarmed robbery.  Respondent argues that Petitioner procedurally defaulted his third, fourth, and sixth claims.

To prevail on a procedurally defaulted claim, a habeas petitioner "must establish cause and prejudice for the defaults" and "also show that the claims are meritorious." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).  Petitioner's claims lack merit, and a "cause-and-prejudice analysis adds nothing but complexity to the case."  *Id*.  A procedural default, moreover, "is not a jurisdictional matter."  *Trest v. Cain*, 522 U.S.87, 89 (1997).  The Court therefore excuses any procedural defaults and proceeds directly to the substance of Petitioner's claims.

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*,

562 U.S. 86, 97 (2011).  Pursuant to § 2254, the court may not grant a state prisoner's

application for the writ of habeas corpus unless the state court's adjudication of the

prisoner's claims on the merits

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court
> may grant the writ if the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application"
> clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the
> state court identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for

Part II).

"[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must

9

also be unreasonable." *Id.* at 411.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III.  Analysis

#### A.  Trial Counsel

Petitioner alleges that his trial attorney deprived him of effective assistance of counsel by failing to (1) move to suppress the complainants' identification testimony, (2) object to the prosecutor's impeachment of an alibi witness with a prior conviction, and (3) seek appointment of a defense expert witness on eyewitness identification.

The Supreme Court has held that an attorney is constitutionally ineffective if "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Unless a defendant

10

makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

### 1. Failure to Move to Suppress Identification Testimony (claim one)

Petitioner claims that his trial attorney should have moved to suppress the complainants' identification testimony because it was based on a suggestive pretrial procedure. The pretrial identification procedure consisted of a photographic array, which was shown to both complainants on May 13, 2008. Petitioner contends that the procedure was suggestive because the complainants were permitted to view the array at the same time and influence or cooperate with each other even though they were not eyewitnesses to each other's crimes.

11

The Michigan Court of Appeals adjudicated Petitioner's claim on direct appeal.  It concluded that defense counsel was not ineffective for failing to move to suppress the identifications because the evidence did not support Petitioner's assertion that the complainants were together during the pretrial identification procedure.

A pretrial confrontation violates due process of law if the confrontation was " ' unnecessarily suggestive and conductive to irreparable mistaken identification.' " *Neil v. Biggers,* 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)).  "Suggestive confrontations are disapproved because they increase the likelihood of misidentification . . . ."  *Id.* at 198.  "[I]f there was more than one witness viewing [a] suspect wanted for different crimes, it is likely that the witnesses will succumb to the temptation of reasoning that 'if he robbed one person, he must be the one who robbed me too.' "  *Jamison v. Collins*, 100 F. Supp. 2d 647, 745 (S.D. Ohio 2000).  But "the fact that more than one witness is present during a lineup does not necessarily invalidate the procedure."  *United States v. Corgain*, 5 F.3d 5, 9 (1st Cir. 1993) (citing *United States v. Lespier*, 558 F.2d 624, 631 (1st Cir. 1977)).

In this case, moreover, exhibits to the habeas petition indicate that Richard Collins viewed the photo array at 1:25 p.m. on May 13, 2008, and that Robin Palmer viewed the array at 1:55 p.m. that day.  *See* Pet. for Writ of Habeas Corpus, Appendix K (the photo array report on Richard Collins) and Appendix L (the photo array report on Robin Palmer).  Ms. Palmer, moreover, testified that the only other people at the viewing were Officer Michael McGinnis and a lawyer.  (Trial Tr. Vol. II, 44, Dec. 9, 2008.)  Richard Collins also testified that the only people in the room when he viewed

12

the photos was an officer and an attorney, and he claimed that he did not see Ms.

Palmer at the police station where the photo array was shown to him.  (*Id.* at 78, 86.)

Officer McGinnis confirmed that the complainants viewed the photo array

separately.  (*Id.* at 117, 122-24.)  The record, therefore, belies Petitioner's contention

that the two complainants viewed the photo array at the same time.  And because

Petitioner has not alleged any other basis for concluding that the pretrial identification

procedure was unnecessarily suggestive, trial counsel was not ineffective for failing to

attempt to suppress the identification testimony.

### 2.  Failure to Object to Impeachment of an Alibi Witness (claim two)

Petitioner asserts that his attorney should have objected when the prosecution

impeached defense witness William Wells with Wells' prior conviction for third-degree

retail fraud.[1]  Petitioner contends that the prior conviction did not necessarily involve

dishonesty or a false statement and that evidence about the conviction was

inadmissible under state law because third-degree retail fraud is a misdemeanor.

Petitioner raised this claim on direct appeal.  The prosecutor conceded on appeal

that Wells' retail fraud conviction should not have been admitted as impeachment

evidence because the factual circumstances of the conviction were not placed on the

record.  The prosecutor nevertheless maintained that defense counsel's failure to object

to the impeachment evidence did not affect the outcome of the trial.  The Michigan

Court of Appeals agreed because

---

[1]  When the prosecutor first asked the trial court for permission to ask Wells about his misdemeanor conviction, defense counsel stated that she had no objection, and the court granted the prosecutor's request.  (Trial Tr. Vol. II, 107-08, Dec. 9, 2008).  Later, when the prosecutor actually asked Wells about his misdemeanor retail fraud conviction, defense counsel did not object.  (*Id.* at 146.)

13

> Wells' credibility was impeached with evidence that he had several aliases, that he failed to come forward with information that defendant had an alibi for the time when the Palmer robbery occurred, and that he did not own the house where the Snap–Back meetings occurred as he had testified.  Additionally, defendant's parole officer testified that she had never heard of the Snap-back program, that she had never referred defendant to the program, and that defendant had never mentioned the program.

*Hudson*, Nos. 290148 and 290215, 2010 WL 1873290, at *5.

The Court of Appeals reasonably concluded that, in light of this evidence, there was not a reasonable probability that the result of the trial would have been different had defense counsel objected to the prosecutor's impeachment of Wells with his retail fraud conviction.  Thus, Petitioner has failed to show that defense counsel's failure to object to evidence of Wells' retail fraud conviction prejudiced the defense.  Because Petitioner has not proved the prejudice component of the *Strickland* test, his claim fails.

### 3.  Failure to Seek Appointment of an Expert Witness (claim three)

Petitioner claims that his attorney should have asked the trial court to appoint an expert witness to point out the weaknesses and dangers inherent in eyewitness identification.  According to Petitioner, a defense expert could have testified about the negative impact that stress and seeing a weapon have on an eyewitness's ability to correctly identify a suspect.  Additionally, Petitioner claims that the expert witness could have testified about the lack of correlation between a witness's confidence level and the reliability of the identification.

Petitioner raised this issue in his first motion for relief from judgment.  The trial court found no merit in the claim.  The court stated that a decision to focus on arguments more likely to prevail is not evidence of ineffective assistance.  The trial court

also stated that Petitioner had failed to show "good cause" under Michigan Court Rule 6.508(D)(3) for not presenting the issue on appeal.

### a. Failure to Consult or Rely on Experts

In some cases, it can be assumed that counsel was ineffective "for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it." *Richter*, 562 U.S. at 106. "There are . . . 'countless ways to provide effective assistance in any given case,' " and " '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). Consequently, a state court could reasonably conclude that defense counsel was not ineffective for developing a strategy that did not require the use of experts. *Id.* at 106-07.

### b. Application

The identification testimony in this case was strong. Both complainants observed Petitioner during the actual crimes and later when Petitioner was circling the block in his car. Neither complainant identified anyone in a photo array that did not include Petitioner, and both complainants independently identified Petitioner in a subsequent photo array that did include Petitioner. Ms. Palmer testified that she identified Petitioner in the photo array "in a matter of seconds" and that she was one hundred percent sure of her identification. (Trial Tr. Vol. II, 44-46, Dec. 9, 2008.) Richard Collins was "very confident" that the man he identified was the man who had robbed him. (*Id.* at 80.) Under these circumstances, a defense expert witness in all likelihood would not have substantially undermined the identification testimony.

15

Furthermore, there was no reason to believe that the pretrial identification procedure was suggestive. As previously explained, the record does not support Petitioner's contention that the two victims viewed the photo array at the same time and cooperated with each other.  And Officer McGinnis testified that the photo array was unusually good because the suspects resembled each other.  (*Id.* at 116-17, 124-25.) *See also* Pet. for Writ of Habeas Corpus, Appendix S (the photo array).

The state court reasonably concluded that defense counsel was not ineffective for failing to request appointment of a defense expert on eyewitness testimony. Petitioner therefore has no right to relief on the basis of his claim.

### 4.  Summary

Petitioner has failed to demonstrate that his trial attorney's performance was deficient and that the allegedly deficient performance prejudiced the defense. Therefore, the state courts' adjudication of his claims about trial counsel did not result in decisions that were contrary to, or an unreasonable application of, *Strickland*.  Petitioner has no right to relief on his first three claims.

### B.  Appellate Counsel (claim five)

Petitioner asserts that his appellate attorney was ineffective because the attorney failed to argue on direct appeal that trial counsel was ineffective for not requesting appointment of an expert witness on identification.  The trial court found no merit in this claim because, in its opinion, appellate counsel's decision to winnow out weaker arguments and to focus on claims more likely to prevail was not evidence of ineffective assistance.

16

The Supreme Court has said that an appellate attorney is not required to raise every non-frivolous claim requested by his or her client if counsel decides, as a matter of professional judgment, not to raise the claim.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  In fact, as the state court recognized,

> the process of " 'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Barnes*, 463 U.S. at 751-52, 103 S.Ct. 3308).  "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  To demonstrate that appellate counsel was ineffective, a habeas petitioner must show (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) a reasonable probability that he would have prevailed on appeal were it not for his appellate attorney's failure to raise the issues.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694); *Etherton v. Rivard*, __ F.3d __, __, No. 14-1373, 2015 WL 5131810, at *8 (6th Cir. Sept. 2, 2015).

Petitioner's underlying claim about trial counsel's failure to request appointment of an expert witness lacks merit for the reasons given above:  the pretrial procedure was not suggestive, the identification evidence was strong, and an expert witness in all likelihood would not have been able to undermine the identification evidence to a significant degree.  Because trial counsel performed adequately in not requesting an expert witness, there is not a reasonable probability that Petitioner would have prevailed on appeal if his appellate attorney had argued that trial counsel should have requested

17

appointment of an expert witness.  Therefore, appellate counsel's performance was not deficient.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

The Court therefore declines to grant relief on Petitioner's claim about appellate counsel.  The state trial court reasonably concluded that appellate counsel was not ineffective.

## C.  Newly Discovered Evidence; Abuse of Discretion (claim four)

Petitioner claims that the state courts violated his right to due process during state collateral proceedings by denying him an evidentiary hearing or new trial on his claim of newly discovered evidence.  Petitioner first raised this issue in his second motion for relief from judgment.  The state trial court rejected Petitioner's claim without addressing the merits of his claim because Petitioner filed a prior motion for relief from judgment, and Michigan Court Rule 6.502(G) generally prohibits a defendant from filing more than one motion for relief from judgment.

### 1.  The Alleged Abuse of Discretion on State Collateral Review

Petitioner blames the state courts for not granting him an evidentiary hearing or new trial on his claim of newly-discovered evidence.  The United States Court of Appeals for the Sixth Circuit, however,

> has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review.  *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002).  [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' "  *Kirby*, 794 F.2d at 246 . . . .  A due process claim related to collateral

18

post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. . . . Accordingly, [the Sixth Circuit has] held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247 . . . .

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).

Furthermore, as more recently explained in *Good v. Berghuis*, 729 F.3d 636 (6th

Cir. 2013), *cert. denied*, 135 S. Ct. 1174 (2015),

it would be an unusual intrusion for federal courts to second-guess state procedures for resolving motions once they have been presented.  States are independent sovereigns, and the federal government generally speaking should respect their choices about how to adjudicate disputes.

. . . [Federal courts] must instead presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim – resolving some motions with neither an evidentiary hearing nor an oral argument, some with an oral argument alone, some with both.

*Id.* at 639.  Consequently, Petitioner's challenge to the state court's post-conviction

procedures is not cognizable on habeas corpus review.

### 2.  Actual Innocence

To the extent Petitioner is claiming to be innocent of the robbery and carjacking

committed on April 10, 2008, his claim lacks merit because "[c]laims of actual innocence

based on newly discovered evidence have never been held to state a ground for federal

habeas relief absent an independent constitutional violation occurring in the underlying

state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

19

"This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Id.*

Furthermore, the newly discovered evidence here is not particularly persuasive. It consists of Antoine Simmons' affidavit that an acquaintance of his named Calvin Wesson admitted to committing the April 10, 2008, carjacking and robbery for which Petitioner was tried and convicted.   According to Simmons' affidavit, Wesson was living on Appoline Street at the time, he usually drove a black four-door Ford Explorer SUV, and he tried to sell a gray Pelle Pelle jacket to Simmons after the carjacking and robbery.   *See* Pet. for Writ of Habeas Corpus, Appendix F.

Simmons explains in his affidavit that he met Petitioner in prison in 2011 and happened to overhear Petitioner discussing his case over the telephone.  He felt badly for Petitioner because he knew who really took Ms. Palmer's car from her on April 10, 2008.  Consequently, he informed Petitioner what he knew about the case, and, at Petitioner's request, he agreed to prepare an affidavit explaining what he knew.  *Id.*

Petitioner attached Simmons' affidavit to his second motion for relief from judgment in which he sought a new trial.  He has also asked this Court to grant him a new trial.  "In the new trial context, motions based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations."  *Herrera*, 506 U.S. at 417.  The statements in Simmons' affidavit are suspect because they were obtained without the

benefit of cross-examination and because they are based on hearsay, namely, what Wesson said to Simmons.

Petitioner contends that Simmons' affidavit is corroborated by Richard Collins' statement to the police that the suspect's name was "Calvin," that Calvin lived at 18000 Appoline Street in Detroit, and that the suspect fled the scene in a black Ford Explorer. The affidavit also corroborates Robin Palmer's testimony that the robber took her Pelle Pelle jacket. But Simmons was not an eyewitness to either robbery, and he could have tailored his affidavit on the basis of the transcript of Petitioner's trial. Further, his affidavit "must be considered in light of the proof of [P]etitioner's guilt at trial," *id.* at 418, which included strong identification testimony from the two victims.

As in *Herrera, t*he proof at trial, even when considered with Simmons' belated affidavit, points strongly to Petitioner's guilt. The Court concludes that Petitioner has not met the "extraordinarily high" threshold needed to establish a claim of actual innocence. *Id.* at 417. Accordingly, relief is not warranted on Petitioner's claim concerning the trial court's failure to hold an evidentiary hearing or grant a new trial on Petitioner' claim of newly discovered evidence.

### D.  "Other Acts" Evidence (claim six)

The sixth and final habeas claim alleges that the trial court violated state law and Petitioner's constitutional right to due process by allowing the prosecutor to impeach Petitioner with a prior conviction for unarmed robbery. Petitioner claims that the prejudicial value of the evidence outweighed its probative value because the prior conviction was for a similar offense. Additionally, Petitioner claims that the evidence

21

against him was not overwhelming, the eyewitness identifications were tainted, and there was no forensic evidence implicating him in the crime.  Petitioner asserts that it would have taken a super-human effort by the jury not to find that he had a propensity to commit robberies and, therefore, must be guilty of the charged offense.

### 1.  The State Courts' Rulings

Before trial, Petitioner filed a motion *in limine* to preclude evidence of his prior conviction.  The trial court denied the motion because credibility, including Petitioner's, would be an issue at trial if Petitioner testified.  The court stated that no confusion would arise from the prior conviction because it did not involve a weapon, as did the current crimes.  The court also offered to give a cautionary jury instruction on request.  (Final Conference, 4-6, 9-10, Dec. 5, 2008.)

Petitioner raised the issue again on direct appeal.  The Michigan Court of Appeals determined that Petitioner waived appellate review of his claim because he testified about his prior conviction on direct examination (Trial Tr. Vol. II, 170, Dec. 9, 2008), rather than on cross-examination.

### 2.  Clearly Established Federal Law

The Supreme Court held in *Ohler v. United States,* 529 U.S. 753, 760 (2000), "that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error."  Petitioner unsuccessfully moved to exclude evidence of his prior conviction, but then mentioned the prior conviction on direct examination at trial.  (Trial Tr. Vol. II, 170, Dec. 9, 2008.)  By introducing evidence of the prior conviction, he waived review of the claim.

22

As explained in *Morgan v. Lafler*, 452 F. App'x 637, 646 n.3 (6th Cir. 2011), "[w]hen one knowingly waives his charged error, that challenge is forever foreclosed, and cannot be resurrected on appeal." *Id.* at 646 n.3 (citing *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000)).

Furthermore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under AEDPA." *Id.* at 513.

Moveover, the trial court instructed the jurors that evidence of Petitioner's 2004 conviction for unarmed robbery could be considered only in deciding whether they thought Petitioner was a truthful witness. The court charged the jurors not to use the evidence for any other purpose. The court also said that "[a] past conviction is not evidence that the defendant committed the alleged crimes in this case." (Trial Tr. Vol. III, 65, Dec. 10, 2008.)

To conclude, Petitioner waived review of his claim, his claim is not cognizable on habeas review, and, even if it were, the alleged error did not rise to the level of a due-process violation, given the trial court's jury instruction about the prior conviction. The Court denies relief on Petitioner's due process claim regarding evidence of his prior conviction for unarmed robbery.

23

## IV.  Conclusion

The state court decisions were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts.  Nor were they so lacking in justification that there was an error beyond any possibility for fairminded disagreement.  The Court **DENIES** Petitioner's habeas corpus petition.

## V.  Denying a Certificate of Appealability, but
## Granting Leave to Proceed *In Forma Pauperis* on Appeal

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Petitioner's trial and appellate counsel did not deprive Petitioner of effective assistance, and Petitioner's claims about his prior conviction and the trial court's denial of his post-conviction motion are not cognizable on habeas review.  Consequently, reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong.  The Court declines to issue a certificate of appealability on any of Petitioner's claims.  Nevertheless, Petitioner may appeal this Court's decision *in forma pauperis*, because he was permitted to proceed *in forma pauperis* in this Court, and an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(3)(A).

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  October 30, 2015

The undersigned certifies that a copy of this document was served on the attorneys of record and David Blake Hudson by electronic means or U.S. Mail on October 30, 2015.

s/Linda Vertriest
Deputy Clerk